

IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

| | |
|---|---|
| EMMA D. COOK and<br>NATALIE C. MCKENZIE,<br>as Personal Representatives of the<br>Estate of John Samuel Cook, deceased,<br><br>    Plaintiffs,<br><br>v.<br><br><br>CORIZON, LLC f/k/a CORIZON, INC.,<br>ALABAMA DEPARTMENT OF<br>CORRECTIONS<br>JEFFERSON S. DUNN;<br>RUTH NAGLICH;<br>PHYLLIS BILLUPS;<br>TAHIR SIDDIQ, MD;<br>WILCOTTE RAHMING, MD<br>FICTITIOUS DEFENDANTS A, B and C<br>are the persons, firms, corporations or<br>other entities who were doing business as<br>Corizon at the material times alleged<br>in this Complaint;<br>FICTITIOUS DEFENDANTS D, E and F<br>are the persons, firms, corporations or<br>other entities who provided and/or failed<br>to provide medical services to John Samuel<br>Cook, deceased;<br>FICTITIOUS DEFENDANTS G, H and I<br>are the persons, firms, corporations or<br>other entities who were the employers,<br>masters and/or principals of Saddiq and<br>of Rahming;<br>FICTITIOUS DEFENDANTS J, K and L<br>are the persons, firms, corporations or other<br>entities whose negligence, wantonness<br>or other wrongful conduct caused or<br>contributed the death of John Samuel<br>Cook; all whose true and correct names are<br>unknown to the Plaintiff<br>at this time but will be added by<br>amendment when ascertained,<br><br>    Defendants. | CIVIL ACTION NO. CV-2017-_____<br><br>**JURY DEMAND** |

# COMPLAINT

## PARTIES

1.  Plaintiffs are of legal age and are citizens and residents of the State of Alabama. Emma Cook was the mother of John Samuel Cook. Natalie McKenzie was the sister of John Samuel Cook. Plaintiffs have been duly appointed by the Probate Court of Montgomery County to jointly serve as the Personal Representatives of the Estate of John Samuel Cook, deceased.

2.  Defendant Corizon, LLC (Corizon) is a Foreign Limited Liability Company with its Principal Address being 105 Westpark Drive Suite 200 Brentwood, TN 37027. The original name of the Company was Correctional Medical Systems, Inc. which was later changed to Corizon, Inc. On or about December 31, 2013, those corporations were converted into Corizon, LLC (hereafter "Corizon"). Its Registered Agent is C T Corporation System whose address is 2 North Jackson Street, Suite 605, Montgomery, AL 36104. Corizon contracted with the Alabama Department of Corrections (ADOC) to provide for the delivery of reasonably necessary medical care to individuals under the physical custody and control of ADOC and housed within its facilities, including John Samuel Cook. Corizon also assumed, among other things, the duties to provide, manage and operate a comprehensive health care system; to deliver quality health care services; to comply with ACA, NCCHC and constitutional standards; and to comply with all applicable state licensure requirements and standards regarding the delivery of health care. Corizon assumed the role of a Health Service Vendor per ADOC AR 700 and agreed to be responsible for the following:

    1. Meeting the conditions and requirements of their contract with the ADOC.

    2. Defining health care services and treatment programs so health staff can competently perform their job assignments.

    3. Assessing the health care services and treatment programs provided to ensure services meet constitutionally required and adequate health service provision for those inmates assigned to the ADOC.

    4. Submitting recommended changes to the OHS Associate Commissioner, as necessary, for those health care services, and treatment programs provided, or omitted, that are in the best interest of the ADOC, and welfare of those inmates assigned to the ADOC.

    5. Investigating health care service complaints, inquiries, or grievances submitted concerning inmate health care as reported to the vendor, as requested by the Commissioner, the Associate Commissioner, or OHS staff. Report findings expediently and appropriately.

    6. Reporting issues of access to care impediment immediately to the appropriate facility Warden and OHS staff.

Corizon also was required to arrange and pay for all emergency ambulance transportation of inmates, including John Samuel Cook.

    3.    Defendant Alabama Department of Corrections (ADOC) is an administrative department of the State, established by law, and is responsible for administering and exercising the direct and effective control over penal and corrections institutions throughout this state. ADOC was required to deliver reasonably necessary medical care to individuals under the physical custody and control of ADOC and housed within its facilities, including John Samuel Cook, in accordance with the United States Constitution and prison standards.

    4.    Defendant Jefferson Dunn is of legal age and is a citizen and resident of the State of Alabama. At all material time, Dunn served as the Commissioner of the Alabama Department

of Corrections and as such is responsible for providing constitutional confinement of inmates including John Samuel Cook. Commissioner Dunn is not being sued in his official capacity. He is being sued personally and in his individual capacity only.

5. Defendant Ruth Naglich is of legal age and is a citizen and resident of the State of Alabama. At all material times, she served as the Associate Commissioner for Health Services of ADOC. Naglich is not being sued in her official capacity. She is being sued personally and in her individual capacity only. Per ADOC AR 700, Naglich, as the Associate Commissioner for Health Services, was responsible for the following:

> 1. Serving as the ADOC advisor to the Commissioner in matters related to the administration and provision of health care services provided to ADOC inmates.
>
> 2. Serving as a technical and financial advisor in matters related to the procurement of contracts relevant to the provision of inmate health care services.
>
> 3. Implementing, administering, and monitoring the provision of health care services and treatment programs for those inmates assigned to the ADOC.
>
> 4. Directing and supervising the Office of Health Services Division.
>
> 5. Providing direction and oversight to the health services vendor(s).
>
> 6. Providing direction to the ADOC staff in inmate health care matters.
>
> 7. Clarifying health care mission, as necessary and relevant, in the overall processes required for the provision of inmate health care

   services, and treatment programs.

   8. Initiating Administrative Regulations, directives, policies and procedures as relative to ADOC and the OHS Division.

   9. Serving as the administrative authority for health care services and treatment program decisions.

   10. Selecting, directing, and supervising the ADOC Contracted Medical Director who will be the clinical authority for health care services and treatment programs.

   11. Determining the goals and objectives for the inmate health care services and treatment programs.

Naglich, as the Associate Commissioner for Health Services, also was required to evaluate and assess that all standards were being met and that Corizon was in full compliance with the contract and was responsible for investigating inmate health care services complaints, inquiries, or grievances, including those made by or on behalf of John Samuel Cook

  6. Defendant Phyllis Billups is of legal age and is a citizen and resident of the State of Alabama. At all material times, Billups served as Warden at Kilby Correctional Facility. Billups is not being sued in her official capacity. She is being sued personally and in her individual capacity only. Per ADOC AR 700 Warden Billups was responsible for the following:

   1. Developing their security procedures, as necessary, for the implementation of AR 700, Office of Health Services Division.

   2. Ensuring that designated ADOC personnel adhere to the provisions of this regulation.

   3. Providing inmates access to those facility health services when this is not

unreasonably related to the needs of the facility.

4. Notifying the OHS Associate Commissioner in writing if unable to implement a specific health service, or there is a conflict between ADOC and contractor polices.

7. Defendant Tahir Saddiq, MD, is of legal age and is a citizen and resident of the State of Alabama. At all material times, Saddiq was a medical doctor and performed services for inmates at Bullock Correctional Facility, including Cook. While providing services to inmates, Defendant Saddiq was paid by and was an employee, agent and/or servant of ADOC, Corizon and/or the Fictitious Defendants.

8. Defendant Wilcotte Rahming, MD, is of legal age and is a citizen and resident of the State of Alabama. At all material times, Rahming was a medical doctor and performed services for inmates at Kilby Correctional Facility, including Cook. While providing services to inmates, Defendant Rahming was paid by and was an employee, agent and/or servant of ADOC, Corizon and/or the Fictitious Defendants.

9. Fictitious Defendants A, B and C are the persons, firms, corporations, or other entities who were doing business as Corizon at the material times alleged in this Complaint.

10. Fictitious Defendant D, E and F are the persons, firms, corporations, or other entities who provided medical services to inmates including John Samuel Cook.

11. Fictitious Defendants G, H and I are the persons, firms, corporations or other entities who were the employers, masters and/or principals of Saddiq and of Rahming.

12. Fictitious Defendants J, K and L are the persons, firms, corporations or other entities whose negligence, wantonness or other wrongful conduct caused or contributed the death of John Samuel Cook.

13. The Fictitious Defendants are not known to Plaintiffs at this time or if their

identities are known to them at this time, their identities as proper party defendants are not known to them, but their true and correct names will be substituted by amendments when the necessary information is ascertained.

### STATEMENTS REGARDING LACK OF IMMUNITY

14. All claims in this lawsuit made against Defendants Dunn, Naglich and Billups are made against them personally and individually. Their wrongful acts and omissions were willful, malicious, fraudulent, in bad faith and/or beyond their authority and in violation of constitutional standards.

15. Corizon contractually agreed to indemnify and hold harmless ADOC. A judgment against ADOC in this case will not be paid by the State Treasury and therefore ADOC is not entitled to immunity.

16. At the times material to this lawsuit, Defendants Corizon, its employees, agents, representatives and subcontractors, were not employees or agents of the State of Alabama and therefore are not afforded any immunity.

17. Defendants Saddiq and Rahming are not State employees or agents and are not afforded immunity. To the extent that the Saddiq and Rahming are deemed to be State agents or employees on any claims in the Complaint, all such claims are being made against them in their personal and individual capacities and their conduct as alleged herein was willful, malicious, fraudulent, in bad faith and beyond their authority.

18. To the extent that the Fictitious Defendants are State agents or employees, they are being sued in their personal and individual capacities and their conduct as alleged herein was willful, malicious, fraudulent, in bad faith and beyond their authority.

### FACTS

19. ADOC is charged with the responsibility of obtaining and providing reasonably necessary medical care for inmates within its custody in accordance with the United States Constitution, the Alabama Constitution, and other applicable laws and standards.

20. Individuals under the custody and control of the ADOC and housed within its Facilities including John Samuel Cook were completely dependent upon Defendants to provide them with medical care. Prisoners are not free to seek their own care, even if they or their families are willing to pay for it.

21. Rather than making decisions based on medical judgment, however, Defendants made medical decisions for Cook based on costs.

22. Defendants have a policy, pattern and practice of denying medical care to prisoners with serious medical conditions, including Cook, or providing such prisoners with care that is so cursory or grossly incompetent that it amounts to a denial of care.

23. Defendants have a policy, pattern and practice of not providing hernia surgeries to prisoners, including John Samuel Cook except in emergency circumstances which are narrow and allows surgery only in life-threatening situations, with no regard for the pain or debilitation that the patient is experiencing or the potential for complications, including death, which can occur by delays in surgery. Defendants have enforced this policy, pattern and practice despite knowing that failing to provide these surgeries will lead to prisoners, including Cook, being left in excruciating pain, limited in their activities, and at risk for serious complications and death. Defendants have acted with deliberate indifference to the serious medical needs of people incarcerated in the ADOC system, including Cook.

24. Defendants have a policy, pattern and practice of not treating inmates, including Cook, who had Hepatitis C. The failure to treat prisoners for Hepatitis C created a significant risk

of serious harm and death.

25. Defendants have a policy, pattern and practice of failing to provide adequate mental health care to prisoners and failed to provide reasonable mental health treatment to Cook.

26. On or about February 21, 2010, John Samuel Cook was placed in the Montgomery County Detention Facility to await transfer to ADOC. While in the MCDF, he was administered Tegretol for Bipolar Disorder.

27. On or about April 9, 2010, John Samuel Cook was transferred to Kilby Correctional Facility. In accordance with ADOC procedures, Cook underwent a medical examination which noted, among other things, that he had a diagnosis of Bi-Polar disorder and was on medication for said disorder but was "generally healthy."

28. On or about April 21, 2010, Cook was transferred from Kilby to Easterling Correctional Facility. Lab tests were done at Easterling resulted in a diagnosis of Hepatitis C.

29. On or about April 15, 2013, Cook was transferred from Easterling to Bullock Correctional.

30. In March 2014, Cook frequently presented to the medical staff at Bullock, including Dr. Saddiq, with complaints of abdomen pain. He was noted to have hepatic cirrhosis and ascites at this point with mild splenomegaly. However, ADOC, Corizon and Saddiq were administering no active treatment for the hepatitis or his Bipolar Disorder.

31. In April, 2014, Cook again presented to the medical staff at Bullock, including Dr. Saddiq, with abdominal pain. Cook was noted to have a hernia with a visible bulge and tenderness at the site. Cook continued to have stomach problems for the next several months.

32. On or about June 19, 2014, during a nursing encounter, it was noted that Cook had a umbilical hernia, with nausea and vomiting at times and absence of bowel signs.

33. ADOC, Corizon and Saddiq performed no evaluation to determine whether the hernia should be surgically repaired to prevent strangulation even though the area was distended and there had been periods of absent bowel sounds and pain.

34. On or about August 19, 2014, Cook again presented with pain related to the umbilical hernia. He was noted to have a visible umbilical bulge with tenderness and weight loss of 15 pounds over the period during the previous 3 months.

35. On or about November 11, 2014, Cook was seen again at Bullock due to the existing hernia problem and severe pain.

36. On or about March 10, 2015, Cook was seen again at Bullock by a nurse for the hernia problem.

37. On or about March 30, 2015, a nurse noted the "inmate has been acting strange". Cook again said he needed to see the doctor about his stomach. He was placed in a single cell.

38. On or about April 27, 2015, despite his deteriorating health, the Chronic Disease Clinic notes state that his exam is "WNL" (within normal limits) and no new symptoms are noted.

39. On May 12, 2015, despite his deteriorating health, his Health Assessment noted that its findings were normal.

40. On or about June 11, 2015, Cook presented with cellulitis. He was given four (4) days of oral antibiotics. Cook was then admitted to the infirmary for IV antibiotic therapy. He lost more weight. After four (4) days, the cellulitis seems to be resolving, but Cook continued to complain of severe stomach cramping. An abdominal x-ray was done that showed an "a dynamic ileus, but early or partial small bowel obstruction cannot be excluded". In spite of this, Mr. Cook was discharged to Population. There was no follow up on this.

41. Cook again presented to the infirmary with swelling in his foot and once again he was treated with antibiotics and lasix. The problem continued with the cellulitis and by July 23, 2015, there are notations of infection and possible allergic reaction. There was documentation of vancomycin allergy in the charts, but the physician continued to treat with vancomycin.

42. On or about August 7, 2015, Cook was again admitted to the infirmary with acute cellulitis. Inexplicably, he is noted to have abdomen bowel signs "WNL."

43. On or about August 15, 2015, at 5:55 a.m., there is a nursing encounter where Cook again complained of pain to the abdomen/umbilical area. His abdomen was distended and painful with guarding and decreased bowel sounds. The hernia was red and distorted. There is a notation of no bowel movement for three (3) days. The physician ordered a laxative and Motrin and sent him back with instructions for care. By 4:45 p.m. that same day, Cook returned with severe abdominal pain and the hernia was noted to be firm, shiny with redness.

44. On that same day, August 15, 2015, around 6:55 pm, Cook was transferred to Bullock County Hospital for evaluation. At the Emergency Room of Bullock County Hospital, Mr. Cook was found to have an incarcerated umbilical hernia. He was transferred to Jackson Hospital by Haynes Ambulance for the surgery services.

45. Mr. Cook was admitted to Jackson Hospital and was taken to surgery on August 16, 2015, for an exploratory laparotomy with small bowel resection and primary anastomosis. The surgeon discovered a gangrenous loop of small intestine and removed it. The Jackson Hospital records noted that Cook had a "long history of Umbilical Hernia.

46. Jackson Hospital and the surgeon discharged Cook to ADOC. The wound instructions from Jackson state that Mr. Cook should have dry gauze tight over the wound with binder and the dressing should be changed as needed. There is a notation to "expect serious

drainage until wound is healed."

47. On or about August 20, 2015, Cook was admitted to a Ward at Kilby. Cook's dressings were not changed as needed even though Cook's drainage was noted as "green."

48. Dr. Rahming ordered a Wound Vac to the abdominal wound which was to be monitored daily. There is no documentation that the Wound Vac was ever obtained and Dr. Rahming failed to follow up to see that a Wound Vac was used on Cook.

49. August 30, 2015, Cook was noted to have a significant mental status change such that he was having altercations with other inmates. He was noted to be defecating on the floor and climbing into other peoples' bed. Dr. Rahming assessed him and noted Asterixis and Portal Systemic Encephalopathy (PSE). Cook's liver enzymes were only slightly elevated at this time, but his white blood count was extremely elevated at 30.9 indicating likely sepsis and his BUN/Creatinine were extremely elevated indicating renal failure and of note the Sodium level was critically low.

50. Cook's nutritional state had deteriorated and at this point as he had a Total Protein of 5.3 and Albumin of 1.9. The lack of attention to his nutritional intake contributed greatly to the ascites problem that was the chief complaint at this point.

51. On or about September 4, 2015, Dr. Rahming ordered the staples to be removed from Cook's abdomen. Mr. Cook stated the next morning that "It's leaking a lot".

52. On September 8, 2015, there is a notation that the skin around the wound was red.

53. On September 8, 2015, Dr. Rahming stated that Mr. Cook developed nausea and vomiting and his vital signs indicate tachycardia. Dr. Rahming notes at that time there is "Dehiscence, no infection, but red." A CBC was drawn which proved there was an infection as the WBC was elevated at 23.4 with 18.7 of the white cells noted as neutrophils.

54. On September 10, 2015, Dr. Rahming indicated that there might be sepsis and ordered the staff to place a colostomy bag over the leak for the patient's comfort. This was an emergent medical situation. Dr. Rahming suggested that the patient be referred to a hospital, but did not order it or do anything to make sure Cook was transferred to a hospital.

55. On or about September 12, 2015, there was an Assisted Living Assessment Again, but again no orders or efforts were made to transfer Cook to a hospital.

56. On or about September 13, 2015, Cook reported that he vomited. At 7:15 that morning the RN on duty indicated that Cook's intestines were out in the colostomy bag. Cook's blood pressure has plummeted to 40/60, critically low.

57. On or about September 13, 2015, Cook was transferred to Jackson ER where he presented with malnutrition and acute renal failure with electrolyte abnormalities in addition to the advanced Hepatic Cirrhosis. His WBC count at this point was 40.2 with 91.9% of the WBC's being neutrophils, again indicating a major infection. Mr. Cook was taken to surgery again shortly after arriving at Jackson Hospital. The Operative Report state that the intestine was ischemic. Jackson Hospital kept Cook in the ICU for several days and treated his severe metabolic acidosis and sepsis along with the treatment of the surgical wound. Cook's surgical wound was treated with a Wound Vac which was noted to be a "big help compared to dressing."

58. On or about October 1, 2015, Cook returned to the infirmary at Kilby.

59. Cook's condition deteriorated, but no efforts were made to transfer him to a hospital for 3 days.

60. After several bouts of vomiting coffee ground emesis, on October 4, 2015, at 2:00 p.m. Cook was transferred to Jackson Hospital

61. On October 5, 2015, Cook died.

62. For more than 5 months prior to his death, Cook and his sister, Natalie McKensie, made numerous requests for medical treatment and complaints for lack of medical treatment to ADOC, Naglich, Billups, Saddiq and Corizon which were largely ignored.

## COUNT I
### (NEGLIGENCE/WANTONES/INTENTIONAL MISCONDUCT-CORIZON)

63. Plaintiffs reallege all paragraphs of the Complaint as if set out here in full.

64. Corizon negligently, wantonly and/or intentionally breached its duties and responsibilities set out in ADOC AR 700 and in the contract executed with ADOC, by among other things, failing to provide mental health treatment, Hepatitis C treatment and hernia surgery for Cook.

65. Corizon's treatment and lack of treatment of Cook was based on costs and not on reasonable medical judgment.

66. Corizon has a pattern and practice of not providing adequate medical care including denying hernia surgeries for inmates, not just in Alabama but in other states as well.

67. As a result, Cook died.

WHEREFORE, Plaintiff demands judgment against Defendants Corizon, Saddiq, Rahming and Fictitious Defendants A-H in a fair amount of compensatory and punitive damages as a jury may assess plus costs.

## COUNT II
### (MEDICAL MALPRACTICE-CORIZON, SADDIQ, RAHMING, FICTITIOUS DEFENDANTS)

68. Plaintiffs reallege all paragraphs of the Complaint as if set out here in full.

69. Corizon, Saddiq, Rahming and the Fictitious Defendants were at the material times were health care providers.

70. John Samuel Cook was a patient of Corizon, Saddiq, Rahming and the Fictitious Defendants.

71. Defendants Corizon, Saddiq, Rahming and the Fictitious Defendants were under a legal duty to possess an exercise that degree of reasonable care, skill and diligence commonly possessed and exercised by similar health care providers under the same facts and circumstances.

72. Corizon, Saddiq, Rahming and the Fictitious Defendants negligently or wantonly breached the standard of care in their treatment and lack of treatment of John Samuel Cook.

73. As a result of the failure of Corizon, Saddiq, Rahming and the Fictitious Defendants to follow the standard of care, John Samuel Cook suffered injuries from which he died.

WHEREFORE, Plaintiff demands judgment against Defendants Corizon, Saddiq, Rahming and Fictitious Defendants A-H in a fair amount of compensatory and punitive damages as a jury may assess plus costs.

## COUNT III
### (NEGLIGENCE/WANTONESS—ADOC, DUNN AND NAGLICH)

74. Plaintiffs reallege all paragraphs of the Complaint as if set out here in full.

75. ADOC, Dunn and Naglich were under a duty to see that inmates, including Cook, received medical care that met constitutional standards and to make sure that Corizon was providing such services.

76. ADOC, Dunn and Naglich knew that Corizon and its employees were not providing adequate health care to inmates and specifically those with mental disoreders, Hepatitis C and hernias.

77. ADOC, Dunn and Naglich negligently or wantonly breached these duties.

78. As a result, John Samuel Cook suffered injuries from which he died.

WHEREFORE, Plaintiffs demands judgment against Defendants ADOC, Dunn and Naglich in a fair amount of compensatory and punitive damages as a jury may assess plus costs.

## COUNT IV
### (NEGLIGENCE/WANTONESS—NAGLICH)

79. Plaintiffs reallege all paragraphs of the Complaint as if set out here in full.

80. Naglich negligently or wantonly breached her duties as required by ADOC AR 700.

81. As a result, John Samuel Cook suffered injuries from which he died.

WHEREFORE, Plaintiffs demands judgment against Defendant Naglich in a fair amount of compensatory and punitive damages as a jury may assess plus costs.

## COUNT V
### (NEGLIGENCE/WANTONESS—BILLUPS)

82. Plaintiffs reallege all paragraphs of the Complaint as if set out here in full.

83. Billups negligently or wantonly breached her duties to John Samuel Cook as required by ADOC AR 700, in that, among other things, she failed to ensuring that designated ADOC personnel adhere to the provisions of AR 700 and failed to providing John Samuel Cook with access to those facility health services when this is not unreasonably related to the needs of the facility.

84. Billups knew or there is a conflict between ADOC and Corizon's polices and failure

to treat Cook, but did nothing about it.

85. Billups negligence or wantonness contributed to lack of treatment for Cook which lead to his death.

WHEREFORE, Plaintiffs demands judgment against Defendant Billups in a fair amount of compensatory and punitive damages as a jury may assess plus costs.

## COUNT V
### (ALL DEFENDANTS – VIOLATION OF 42 U.S.C. § 1983--EIGHTH AND FOURTEENTH AMENDMENTS, CRUEL AND UNUSUAL PUNISHMENT)

86. Plaintiffs reallege all paragraphs of the Complaint as if set out here in full.

87. Defendants subjected John Samuel Cook to a substantial risk of serious harm and injury from inadequate medical care in violation of 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments to the U.S. Constitution.

88. John Samuel Cook medically needed hernia surgeries, appropriate follow up care for the surgery when finally performed, treatment for Hepatitis C and treatment for his other medical conditions.

89. Defendants knew John Samuel Cook was in need of medical treatment and that the failure to provide it would cause excruciating pain and would lead to John Samuel Cook's death.

90. Defendants were deliberately indifferent to John Samuel Cook's serious medical needs.

91. Defendants denied John Samuel Cook the needed medical treatment and by doing so imposed punishment far in excess of that authorized by law, contrary to the Eighth and

Fourteenth Amendments.

92. Defendants' denial of John Samuel Cook's needed medical treatment violated all standards of decency, contrary to the Eighth and Fourteenth Amendments.

93. Defendants while acting under color of state law intentionally violated the John Samuel Cook's right not to be subjected to cruel and unusual punishment under the Eighth and Fourteenth Amendment to the Constitution.

94. Defendant's acts and failures to act caused or contributed to cause the death of John Samuel Cook.

WHEREFORE, Plaintiffs demands judgment against all Defendant in a fair amount of compensatory and punitive damages as a jury may assess plus costs.

/S/ *Kenneth J. Mendelsohn*
KENNETH J. MENDELSOHN (MEN 001)
Attorney for Plaintiff

**OF COUNSEL:**

**JEMISON & MENDELSOHN**
1772 Platt Place
Montgomery, Alabama 36117
(334) 213-2323 (Telephone)
(334) 213-5663 (Facsimile)
Email: kenny@jmfirm.com

/S/*Deborah Q. Harding*
DEBORAH Q. HARDING (HAR264)
Attorney for Plaintiff

OF COUNSEL:

Harding & Claunch, LLC
1703 Platt Place
Montgomery, AL 36117
334.356.6070 (Telephone)
334.356.6040 (Facsimile)
Email: dqharding44@gmail.com

<u>*PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL ISSUES IN THE COMPLAINT*</u>

<u>*S/ Kenneth J. Mendelsohn*</u>
OF COUNSEL

*Defendants should be served by certified mail as follows:*

Corizon, LLC
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104

ALABAMA DEPARTMENT OF CORRECTIONS
301 S. Ripley Street
P.O. Box 301501
Montgomery, AL 36130-1501

JEFFERSON S. DUNN
Commissioner
Alabama Department of Corrections
301 S. Ripley Street
P.O. Box 301501
Montgomery, AL 36130-1501

RUTH NAGLICH
Alabama Department of Corrections
301 S. Ripley Street
P.O. Box 301501
Montgomery, AL 36130-1501

PHYLLIS BILLUPS
Alabama Department of Corrections
301 S. Ripley Street
P.O. Box 301501

Montgomery, AL 36130-1501

TAHIR SIDDIQ
102 Conecuh Ave W
Union Springs, AL 36089

WILCOTTE RAHMING
301 S. Ripley Street
P.O. Box 301501
Montgomery, AL 36130-1501

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing pleading has been served upon the Attorney General of the State of Alabama by United States Mail on this the 8th day of March, 2017.

*S/ Kenneth J. Mendelsohn*
OF COUNSEL