IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| EMMA D. COOK, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 2:17-CV-178-SMD |
| | ) |
| CORIZON, LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION & ORDER**

**I.     INTRODUCTION**

This lawsuit arises from the death of a State prisoner, John S. Cook ("Cook"), due to allegedly inadequate medical care. Plaintiffs, the personal representatives of Cook's estate, bring personal capacity constitutional and state-law wrongful death claims against, among others, three Alabama Department of Corrections' ("ADOC") supervisory officials: ADOC Commissioner Jefferson Dunn, ADOC Associate Commissioner for Health Services Ruth Naglich, and Warden of the Kilby Correctional Facility Phyllis Billups. Plaintiffs' amended complaint (Doc. 26) pleads no facts showing that these ADOC supervisory officials had any personal involvement in Cook's allegedly inadequate medical care, and their constitutional and state-law claims against these ADOC supervisory officials are due to be dismissed for failure to state a claim. In addition, plaintiffs' claims

against fictitious defendants A-L are dismissed because fictitious-party practice is generally prohibited in federal court.

## II. FACTUAL ALLEGATIONS

Plaintiffs allege that Cook was Bipolar and suffered from Hepatitis C. Amd. Compl. (Doc. 26) ¶¶ 26-28. In April 2013, Cook was transferred to Bullock Correctional Facility. *Id.* at ¶ 29. In April 2014, Cook presented to the medical staff at Bullock and was noted to have a hernia. *Id.* at ¶ 31. On August 15, 2015, Cook complained of severe abdominal pain to medical staff at Bullock Correctional Facility, and he was transferred to Bullock County Hospital for evaluation. *Id.* at ¶¶ 43-44. The Emergency Room at Bullock County diagnosed Cook with an incarcerated umbilical hernia and transferred him to Jackson Hospital for surgery. *Id.* at ¶ 44. Jackson Hospital staff performed hernia surgery on August 16, 2015, and removed a gangrenous loop of small intestine noting that Cook had a long history of umbilical hernia. *Id.* at ¶ 45.

Jackson Hospital discharged Cook to ADOC with instructions for proper wound care. *Id.* at ¶ 45. On or about August 20, 2015, Cook was admitted to a ward at Kilby Correctional Facility. *Id.* at ¶ 47. Cook's wound was not properly cared for, he had a significant mental status change, and his nutritional state deteriorated. *Id.* at ¶¶ 48-53. On September 10, 2015, Defendant Dr. Rahming noted that there might be sepsis and suggested that Cook be referred to a hospital. *Id.* at ¶ 54.

On or about September 13, 2015, Cook was transferred to the Jackson Hospital Emergency Room where he presented with malnutrition and acute renal failure with electrolyte abnormalities in addition to advanced Hepatic Cirrhosis. *Id.* at ¶ 57. Jackson

Hospital staff performed surgery and noted that Cook's intestine was ischemic. *Id.* Jackson Hospital kept Cook in the ICU for several days and treated his severe metabolic acidosis and sepsis along with treatment of the surgical wound. *Id.*

On or about October 1, 2015, Cook returned from Jackson Hospital to the infirmary at Kilby Correctional Facility. *Id.* at ¶ 58. On October 4, 2015, after several bouts of vomiting coffee ground emesis, Cook was transferred back to Jackson Hospital where he died on October 5, 2015. *Id.* at ¶¶ 60-61.

## II. PROCEDURAL HISTORY

Plaintiffs filed this action in State court on March 8, 2017, asserting claims for negligence/wantonness, medical malpractice, and violation of 42 U.S.C. § 1983. State Court Complaint (Doc. 1) Attachment 1. Defendants removed on the basis of federal question jurisdiction (Doc. 1), and defendants ADOC, Dunn, Naglich, and Billups moved to dismiss. (Doc. 12). The court then *sua sponte* entered an order instructing plaintiffs to file an amended complaint to clarify whether they were pursuing a wrongful death claim and denying defendants' motion to dismiss without prejudice to refile. (Doc. 25). Plaintiffs filed their first amended complaint (Doc. 26), which is the operative pleading now before the court, and defendants ADOC (Doc. 28), Billups (Doc. 29), Dunn (Doc. 30), and Naglich (Doc. 31) each filed separate motions to dismiss. By separate Order filed contemporaneously with this Order, the court granted ADOC's motion to dismiss.

## III. PLAINTIFFS' CLAIMS

The amended complaint pleads four counts against the ADOC supervisory officials. Count III is a state-law wrongful death claim against Commissioner Dunn and Associate

3

Commissioner Naglich in their individual capacities alleging that they negligently or wantonly violated a duty to ensure that Corizon provided constitutionally adequate medical care to inmates. Amd. Compl. (Doc. 26) at ¶¶ 81-86. Count IV is a state-law wrongful death claim against Associate Commissioner Naglich in her individual capacity alleging that she negligently or wantonly breached her duties as required by ADOC AR 700. Amd. Compl. (Doc. 26) at ¶¶ 87-90. Count V is a state-law wrongful death claim against Warden Billups in her individual capacity alleging that she negligently or wantonly breached her duties under ADOC AR 700. Amd. Compl. (Doc. 26) at ¶¶ 91-95. Count VI is a 42 U.S.C. § 1983 claim against all defendants for deliberate indifference to Cook's serious medical needs resulting in his death. Amd. Compl. (Doc. 26) ¶¶ 96-105.

V. **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint against Rule 8's pleading standard which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to satisfy this standard "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotes and citations omitted). The Supreme Court instructs

4

that, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because legal conclusions are not entitled to the presumption of truth, a court considering a motion to dismiss should first "eliminate any allegations in the complaint that are merely legal conclusions" and then, if "there are [any] well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Assoc. v. Cigna*, 605 F.3d 1283, 1290 (11th Cir. 2010) (*quoting Iqbal,* 556 U.S. at 678-79). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

## VI. ANALYSIS

Personal involvement by an individual-capacity defendant is an indispensable element of a valid legal claim. Such personal involvement only exists when the individually-named defendant performed the acts or omissions at issue himself or directed a subordinate to do so. Plaintiffs' amended complaint contains no well-pleaded facts showing that Commissioner Dunn, Associate Commissioner Naglich, or Warden Billups had any personal involvement in the allegedly inadequate medical care received by Cook. Rather, they appear to be sued individually simply because of the supervisory positions they occupy.

The Supreme Court instructs that "[i]n a § 1983 suit . . . –where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. Therefore, to state a claim against supervisory officials like the ADOC officials sued here, "a plaintiff must plead that each [supervisory] Government-official defendant, through the official's own individual actions, has violated the constitution." *Id.* at 676.

The same concept holds true for common-law claims. As early as 1888, the Supreme Court held that supervisory government officials could not be held personally liable for the wrongs of their subordinates when "[t]here is nothing in the evidence to connect the defendant personally with any such wrong." *Robertson v. Sichel*, 127 U.S. 507, 515 (1888). The Supreme Court held broadly that "[a] public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances or negligences or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties." *Id.* at 515-516.

Turning to plaintiffs' specific claims here, Count VI is a § 1983 deliberate indifference claim. Amd. Compl. (Doc. 26) ¶¶ 96-105. "[D]eliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment's prohibition on cruel and unusual punishment.[1] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Eleventh Circuit explains that "a prison official cannot be found deliberately indifferent under the

---

[1] The Eighth Amendment's prohibition against cruel and unusual punishment applies to the States through the Fourteenth Amendment's Due Process Clause. *Robinson v. Calif.*, 370 U.S. 660 (1962).

6

Eighth Amendment 'unless the official *knows of* and *disregards an excessive risk to inmate health or safety*; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003) (emphasis original) (*quoting Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Therefore, to state a claim for deliberate indifference, plaintiffs must allege sufficient facts to establish that each supervisory official: (1) had personal, subjective knowledge of a risk of serious harm to Cook; (2) personally disregarded that risk; (3) through conduct that was more than mere negligence. *Farrow*, 320 F.3d at 1245. Counts III, IV, and V are wrongful death claims brought pursuant to Ala. Code 1975 § 6-5-410. Amd. Compl. (Doc. 26) ¶¶ 82, 88, 92. This statute requires a wrongful act, omission, or negligence. Ala. Code 1975 § 6-5-410(a) & (b). Therefore, plaintiffs must plead sufficient facts to show that each ADOC supervisory official defendant personally committed a wrongful act, omission, or negligence related to Cook's medical care that caused his death.

Defendants argue that a heightened pleading standard governs § 1983 cases. (Docs. 29, 30, 31) at 8, 7, 7. However, the Eleventh Circuit has recognized that *Iqbal* effectively overturned its prior heightened-pleading precedent, and there is no longer a heightened pleading standard for § 1983 claims. *Randall v. Scott*, 610 F.3d 701, 709-710 (11th Cir. 2010). *See also*, *Glossip v. Gross*, __U.S. __, 135 S.Ct. 2726, 2739 (2015) ("§1983 alone does not impose a heightened pleading requirement"). This court will apply the general Rule 8(a)(2) pleading standard as articulated by the Supreme Court in *Iqbal*. This standard

governs all civil actions and proceedings in the United States district courts. *Iqbal*, 556 U.S. at 684.

The court will follow the Eleventh Circuit's instruction in *American Dental Association*, 605 F.3d at 1290, and first eliminate all allegations concerning the ADOC supervisory officials that are merely legal conclusions. It will then determine if any remaining well-pleaded factual allegations support individual-capacity claims against these ADOC supervisors. *Id.* The court will analyze the allegations against each supervisory official seriatim beginning with Commissioner Dunn.

### A. <u>Commissioner Jefferson Dunn</u>

The amended complaint here consists of 105 numbered paragraphs divided into sections labeled "Parties," "Statements Regarding Lack of Immunity," "Facts," and Counts I-VI. Paragraph 4 in the "Parties" section first identifies Dunn as the Commissioner of ADOC. Amd. Compl. (Doc. 26) ¶ 4. This is a well-pleaded fact. It then states that he is responsible for providing constitutional confinement of inmates including Cook. This is a legal conclusion. Paragraph 4 further states that Dunn is not being sued in his official capacity, but is being sued personally in his individual capacity. *Id.* This is plaintiffs' characterization of their claims which is another legal conclusion.

Commissioner Dunn is next mentioned in paragraph 14 in the "Statements Regarding Lack of Immunity" section. Amd. Compl. (Doc. 26) ¶ 14. That paragraph starts with the same statement that the claim against Dunn is an individual-capacity claim found in paragraph 4. It then states that Dunn's, Naglich's, and Billup's "wrongful acts or omissions were willful, malicious, fraudulent, in bad faith and/or beyond their authority

and in violation of constitutional standards." *Id.* This is a classic example of a bare legal conclusion devoid of any factual content that is not entitled to the presumption of truth.

The amended complaint next contains a section labeled "Facts" consisting of 43 separate, numbered paragraphs. Amd. Compl. (Doc. 26) ¶¶ 19-62. Notably, Commissioner Dunn's name does not even appear in the "Facts" section. *Id.* Dunn's name is next mentioned in Count III of the amended complaint. Amd. Compl. (Doc. 26) ¶¶ 81-86. Paragraph 83 alleges that Dunn and others were "under a duty to see that inmates, including Cook, received medical care that met constitutional standards and to make sure that Corizon was providing such services." *Id.* at ¶ 83. Paragraph 84 alleges that Dunn and others "knew that Corizon and its employees were not providing adequate health care to inmates and specifically those with mental disorders, Hepatitis C and Hernias." *Id.* at ¶ 84. Paragraph 85 alleges that Dunn and others "negligently or wantonly breached these duties," and paragraph 86 alleges that this negligence or wantonness caused and/or contributed to Cook's death. *Id.* at ¶¶ 85-86. The above allegations in Count III are exactly the type of "'formulaic recitation of the elements of a cause of action'" that the Supreme Court held "'will not do'" in *Iqbal.* 556 U.S. at 678 (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

There is no other mention of Commissioner Dunn by name in the amended complaint. However, Count VI is a § 1983 deliberate indifference claim against all defendants, and he is presumably included in the collective "defendants" in this count. Amd. Compl. (Doc. 26) ¶¶ 96-105. As with the allegations in Count III, the allegations in Count VI are simply a recitation of the elements of a deliberate indifference claim without

9

any specific factual content showing Dunn's personal involvement. As such, they are not entitled to be taken as true. *Iqbal*, 556 U.S. at 678. Therefore, other than identifying his supervisory position, the amended complaint contains no well-pleaded facts concerning Commissioner Dunn, and it fails to state an individual-capacity claim against him. *Iqbal*, 556 U.S. at 676-677.

### B. Associate Commissioner Ruth Naglich

Naglich is identified as ADOC's Associate Commissioner for Health Services in paragraph 5 of the "Parties" section. Amd. Compl. (Doc. 26) ¶ 5. This is a well-pleaded fact. Paragraph 5 then contains 11 numbered sub-paragraphs that quote the responsibilities of the Associate Commissioner of the Office of Health Services from ADOC Administrative Regulation (AR) 700. *Id.* This quotation from a State administrative regulation is essentially a citation to the regulation, not a fact that must be accepted as true. The paragraph concludes with a sentence alleging that "Naglich, as the Associate Commissioner for Health Services, also was required to evaluate and assess that all standards were being met and that Corizon was in full compliance with the contract and was responsible for investigating inmate health care services complaints, inquiries, or grievances, including those made by or on behalf of John Samuel Cook." *Id.* This sentence is entirely conclusory and will not be accepted as true.

Naglich is next mentioned in paragraph 14 in the section titled "Statements Regarding Lack of Immunity." As previously addressed, paragraph 14's allegation that Naglich's "wrongful acts and omissions were willful, malicious, fraudulent, in bad faith

and/or beyond [her] authority and in violation of constitutional standards" is a naked legal conclusion that cannot support a claim.

Turning to the "Facts" section, Naglich is only mentioned in a single sentence. That sentence, paragraph 62, reads in its entirety: "[f]or more than 5 months prior to his death, Cook and his sister, Natalie McKensie, made numerous requests for medical treatment and complaints for lack of medical treatment to ADOC, Naglich, Billups, Saddiq, and Corizon which were largely ignored." Amd. Compl. (Doc. 26) ¶ 62. These allegations are entirely conclusory. The amended complaint does not provide the essential who, what, where, when, why, and how concerning the alleged communications to Naglich about Cook's medical care that are the hallmarks of well-pleaded facts. *See, Marshall v. Ala. Coll. of Osteopathic Med.*, 2018 WL 4955211, at *5 (M.D. Ala. 2018) (rejecting as conclusory bare allegation that plaintiff made "the requisite request for a reasonable accommodation without stating how the request was submitted, when it was tendered, to whom, what it asked for, or why").

There are no further factual allegations in the amended complaint concerning Associate Commissioner Naglich. She is included as a defendant with Commissioner Dunn in Counts III and VI, and the allegations in these counts are eliminated for the reasons stated above. Count IV is a separate wrongful death claim against Naglich. Amd. Compl. (Doc. 26) ¶¶ 87-90. It alleges that "Naglich negligently or wantonly breached her duties as required by ADOC AR 700" and that this "caused and/or contributed to cause the death of John Samuel Cook." *Id.* at ¶¶ 89-90. These are legal conclusions. Accordingly, the

11

amended complaint contains insufficient factual allegations concerning Naglich to state a personal capacity claim against her.

### C. Warden Phyllis Billups

Plaintiffs' claims against Warden Billups fail for the same reasons as their claims against Commissioner Dunn and Associate Commissioner Naglich. Billups is identified as the Warden of the Kilby Correctional Facility in paragraph 6 of the "Parties" section. Amd. Compl. (Doc. 26) ¶ 6. This is a well-pleaded fact. Paragraph 6 then quotes the warden's responsibilities section from ADOC AR 700. This is simply a legal citation.

Billups is next mentioned in paragraph 14 of the "Statements Regarding Lack of Immunity" which is eliminated as a naked legal conclusion. *Id.* at ¶ 14. Turning to the "Facts" section, like Naglich, Billups is only mentioned in paragraph 62 which alleges that Cook and his sister "made numerous requests for medical treatment and complaints for lack of medical treatment to ADOC, Naglich, Billups, Saddiq, and Corizon which were largely ignored." *Id.* at ¶ 62. This paragraph is eliminated as conclusory for the reasons stated above. There are no further factual allegations concerning Warden Billups in the amended complaint.

Examining the numbered counts, Count V is a wrongful death claim against Billups. Amd. Compl. (Doc. 26) ¶¶ 91-95. It alleges that she negligently or wantonly breached her duties under ADOC AR 700 "in that, among other things she failed to ensure that designated ADOC personnel adhere to the provisions of AR 700 and failed to provide John Samuel Cook with access to those facility health services when this is not unreasonably related to the needs of the facility." *Id.* at ¶ 94. Count V further alleges that "Billups

12

knew or should have known there is a conflict between ADOC and Corizon's policies and failure to treat Cook but did nothing about it" and that "[t]he negligence or wantonness of Billups caused and/or contributed to cause" Cook's death. *Id.* at ¶¶ 94-95. These allegations against Billups in Count V are all legal conclusions which the court eliminates. Finally, Billups is included as a defendant in the deliberate indifference count, Count VI, and the allegations in this count are eliminated as legal conclusions for the reasons stated above. Accordingly, plaintiffs have not pleaded sufficient facts to show Warden Billups' personal involvement in Cook's allegedly inadequate medical treatment, and they have failed to state a personal-capacity claim against her.

### D. Fictitious Defendants

Plaintiffs also bring claims against fictitious defendants A-L. Amd. Compl. (Doc. 26) ¶¶ 9-13. The court will *sua sponte* dismiss these defendants because, as the Eleventh Circuit has recognized, "[a]s a general matter, fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). A limited exception to this general prohibition exists "when the plaintiff's description of the defendant is so specific as to be at the very worst, surplusage." *Id.* (internal quotes and citation omitted). In other words, there is a difference between suing a specific, known party under a fictitious name which is permitted in certain circumstances and suing an entirely unknown, hypothetical entity or person which is prohibited. Plaintiffs' claims against the fictitious defendants here all fall within the latter category.

Plaintiffs identify fictitious defendants A, B, and C as "the persons, firms, corporations, or other entities who were doing business as Corizon at the material times

alleged in the complaint." Amd. Compl. (Doc. 26) ¶ 9. Fictitious Defendants D, E, and F "are the persons, firms, corporations, or other entities who provided medical services to inmates including John Samuel Cook." *Id.* at ¶ 10. Fictitious Defendants "G, H and I are the persons, firms, corporations or other entities who were the employers, masters and/or principals of Saddiq and of Rahming," and fictitious defendants "J, K, and L are the persons, firms, corporations or other entities whose negligence, wantonness or other wrongful conduct caused or contributed [to] the death of John Samuel Cook." *Id.* at ¶¶ 11-12. At most, these allegations vaguely identify hypothetical defendants that may or may not exist. They do not fit within the limited exception to the general prohibition on fictitious-party pleading; therefore, all claims against fictitious parties A-L are dismissed and the fictitious parties are dismissed as party defendants.

## VII. CONCLUSION

Accordingly, for all of the above reasons, it is

ORDERED that Defendant Phyllis Billups' Motion to Dismiss (Doc. 29); Defendant Jefferson Dunn's Motion to Dismiss (Doc. 30); and Defendant Ruth Naglich's Motion to Dismiss (Doc. 31) are GRANTED, and all of plaintiffs' claims against these defendants are DISMISSED without prejudice. It is further

ORDERED that all of plaintiffs' claims against fictitious parties A-L are DISMISSED with prejudice and the fictitious parties are dismissed as party defendants.

DONE this 10th day of May, 2019.

/s/ Stephen M. Doyle
UNITED STATES MAGISTRATE JUDGE