IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| EMMA D. COOK, *et al.*, | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 2:17-CV-178-SMD |
| | ) |
| CORIZON, LLC, *et al.*, | ) |
| | ) |
|     Defendants. | ) |

**OPINION & ORDER**

**I.**     **INTRODUCTION**

This case arises from the death of a State prisoner, John S. Cook (Cook), due to allegedly substandard prison medical care. Plaintiff, the personal representative of Cook's estate[1], brings 42 U.S.C. § 1983 deliberate indifference, Amd. Compl. (Doc. 26) Count VI, and state-law medical malpractice and wrongful death claims, *id.* Counts I & II, against Corizon, LLC, Tahir Siddiq, M.D., and Wilcotte Rahming, M.D. (collectively "defendants"). Before the Court is defendants' motion to preclude the testimony of plaintiff's medical expert, Nicholas Namias, M.D., (Doc. 51), under both the Alabama Medical Liability Act (AMLA), Ala. Code 1975 §§ 6-5-480 through 488; 6-5-540 through 552, and Rule 702 of the Federal Rules of Evidence. Mot. to Preclude (Doc. 51). For the

---

[1] At the time of filing, Cook's mother and sister served as co-administrators of his estate. However, his mother passed away during the pendency of this case. Pl's Opp. (Doc. 61) at 1.

reasons that follow, defendants' motion is GRANTED with respect to plaintiffs' state-law claims and DENIED with respect to plaintiffs' federal claims.

## II. ANALYSIS

### A. State-law Claims – Amd. Compl. (Doc. 26) Counts I & II

Pursuant to the *Erie*[2] doctrine, federal courts adjudicating state-law claims under diversity or supplemental jurisdiction apply state substantive law and federal procedural law. *Palm Beach Golf Center-Boca, Inc. v. Sarris*, 781 F.3d 1245, 1259-60 (11th Cir 2015). Here, defendants properly removed this action from state court on the basis of federal question jurisdiction, 28 U.S.C. § 1331, and the Court exercises supplemental jurisdiction over plaintiff's state-law claims pursuant to 28 U.S.C. § 1367 (a). *See* Notice of Removal (Doc. 1). Alabama substantive law therefore governs these claims.

To maintain a malpractice or wrongful death claim against a healthcare provider under Alabama law, a "plaintiff must ordinarily present expert testimony from a similarly situated health-care provider as to (1) the appropriate standard of care, (2) a deviation from that standard of care, and (3) a proximate causal connection between the . . . breach and the injury[.]" *Collins v. Herring Chiropractic Ctr., LLC*, 237 So. 3d 867, 870 (Ala. 2017) (internal quotes and citation omitted). The AMLA establishes the professional credentials necessary for an expert to qualify as a "similarly situated health care provider." Ala. Code 1975 § 6-5-548.

---

[2] *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

If the defendant health care provider "is certified by an appropriate American medical board as a specialist, is trained and experienced in a medical specialty, and holds himself or herself out as a specialist," then a plaintiff's expert must (1) be "licensed by the appropriate regulatory board or agency of [Alabama] or some other state," (2) be "trained and experienced in the same specialty," (3) be "certified by an appropriate American board in the same specialty," and (4) have "practiced in this specialty during the year preceding the date that the alleged breach of the standard of care occurred." Ala. Code 1975 § 6-5-548 (c). The statute explains that "[i]t is the intent of the Legislature that in the event the defendant health care provider is certified by an appropriate American board or in a particular specialty and is practicing that specialty at the time of the alleged breach . . . a health care provider may testify as an expert witness with respect to an alleged breach of the standard of care . . . only if he or she is certified by the same American board in the same specialty." Ala. Code 1975 § 6-5-548 (e). The rule established in § 8-5-548 (c) is a substantive component of Alabama malpractice law. *See Barton v. Am. Red Cross*, 829 F. Supp. 1290, 1299 (M.D. Ala. 1993) (holding that "[s]ection 6-5-548, the AMLA's provisions governing expert witnesses . . . applies to this federal lawsuit").

The Alabama Supreme Court explains that, "to determine whether the defendant health-care provider qualifies as a specialist, we must first determine the field of medical practice in which the negligence is alleged to have occurred." *Smith v. Fisher*, 143 So. 3d 110, 121 (Ala. 2013) (internal quotes and citations omitted). Under the AMLA, "[i]f the defendant health-care provider is a specialist in the field of practice in which the alleged

3

negligence occurred, then the proffered expert witness must also be a specialist in that field under § 6-5-548 (c)[.]" *Id.*

Here, it is undisputed that defendants Drs. Siddiq and Rahming are both board certified by the American Board of Internal Medicine.  Pl's Opp. (Doc. 62) at 9.  Dr. Rahming is also certified in the internal medicine subspecialty of gastroenterology.  *Id.*  Plaintiff concedes that her expert, Dr. Namias, is not board certified in internal medicine or gastroenterology.  *Id.*  Rather, he is board certified in general surgery.  *Id.*  Despite this, plaintiff argues that Dr. Namias should be allowed to testify concerning the relative standard of care applicable to Drs. Siddiq and Rahming because they were "performing basic and elementary care for prisoners" and "not providing specialized care for Cook that required board certification in internal medicine or gastroenterology." *Id.* at 8.  Plaintiff's argument is unavailing.

Plaintiff alleges that Cook entered the state prison system in 2010 suffering from bipolar disorder and Hepatitis C.  Amd. Compl. (Doc. 26) ¶¶ 27-29.  He was transferred to Bullock Correctional Facility in 2013 where Dr. Saddiq was the contract physician.  *Id.* ¶¶ 7, 29.  From March 2014 through August 2015, Cook frequently presented to the medical staff at Bullock, including Dr. Saddiq, with complaints of abdominal pain.  *Id.* ¶¶ 30-31.  During this period, Cook suffered from hepatic cirrhosis, an accumulation of serous fluid in the abdomen (ascites), mild enlargement of the spleen (splenomegaly), cellulitis, and a swollen foot.  *Id.* ¶¶ 30, 40-42.  Cook also had an umbilical hernia.  *Id.* ¶¶ 31-35, 43-44.  Dr. Namias testifies that Dr. Saddiq breached the standard of care by failing to order a surgical consultation for Cook's hernia prior to it becoming incarcerated.  Namias Depo.

4

(Doc. 60-4) at 44-47.  Dr. Saddiq was practicing in the field of internal medicine at the time of this alleged breach.

Internal medicine is an extremely broad specialty.  The American Board of Medical Specialties' (ABMS) website defines Internal Medicine as follows: "[a]n internist is a personal physician who provides long-term comprehensive care in the office and in the hospital, managing both common and complex illnesses of adolescents, adults and the elderly." [3]  The ABMS states that "[i]nternists are trained in the diagnosis and treatment of cancer, infections and diseases affecting the heart, blood, kidneys, joints and the digestive, respiratory, and vascular systems.  They are also trained in the essentials of primary care internal medicine, which incorporates an understanding of disease prevention, wellness, substance abuse, mental health and effective treatment of common problems of the eyes, ears, skin, nervous system and reproductive organs." *Id.*  Dr. Saddiq's provision of long-term comprehensive care to Cook for his complex range of medical problems fits squarely within the field of internal medicine.  Accordingly, only a board-certified internist may testify against him regarding the appropriate standard of care.  Ala. Code 1975; *Smith*, 143 So. 3d at 121.

With respect to Dr. Rahming, plaintiff alleges that he was the contract physician at Kilby Correctional Facility where Cook received post-operative care after being discharged from Jackson Hospital following his hernia surgery.  Amd. Compl. (Doc. 26) ¶¶ 8, 47-60.  Providing post-operative care to an adult patient following hernia surgery is within the field

---

[3] https://www.abms.org/member-boards/contact-an-abms-member-board/american-board-of-internal-medicine/#abim-im (accessed 9/21/2020).

of internal medicine, and § 6-548 (c) precludes Dr. Namias from testifying against Dr. Rahming concerning the relative standard of care. *See Smith*, 143 So. 3d at 121 (post-operative care is within the realm of internal medicine). The Alabama Supreme Court instructs that "[a]ny overlap or similarity in the practice of a board-certified []surgeon and a board-certified specialist in internal medicine . . . is irrelevant to this determination." *Id.* at 122. Therefore, the fact that Dr. Namias is also qualified to provide post-operative care in no way alters the Court's analysis. Moreover, it does not appear that Dr. Namias even opines that Dr. Rahming breached the standard of care. When asked in his deposition, "so you would have no criticism, then, of Dr. Rahming," Dr. Namias answered unequivocally "[n]o." Namias Depo. (Doc. 60-4) at 44-45. Therefore, Dr. Namias is precluded from testifying regarding any alleged breach of the standard of care on plaintiff's state-law claims.

**B.      Federal Claims – Amd. Compl. (Doc. 26) Count VI**

Plaintiff's federal claims are a different matter. Count VI is an Eighth Amendment deliberate indifference claim brought pursuant to 42 U.S.C. § 1983. Amd. Compl. (Doc. 26) Count VI. Dr. Namias' ability to testify on this claim is governed by Rule 702 of the Federal Rules of Civil Procedure, not § 6-548 of the AMLA. Under the federal rules, district courts perform an important gatekeeping function to ensure that an expert's proffered testimony is both reliable and relevant before being admitted into evidence. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). This role "is not intended to supplant the adversary system or the role of the jury," and "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of

proof [remain] the traditional and appropriate means of attacking debatable but admissible evidence." *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001) (internal quotes and citations omitted).

The Eleventh Circuit instructs that in determining the admissibility of expert testimony under Rule 702, district courts "must consider whether: '(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact issue.'" *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (*quoting City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). "The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion[.]" *Frazier*, 387 F.3d at 1260.

Turning to the first factor, qualification, Dr. Namias is a graduate of Rutgers Medical School. Namias CV (Doc. 60-5) at 1. He completed a residency in general surgery and fellowships in surgical critical care and trauma at Jackson Memorial Hospital in Miami, Florida. *Id.* at 1-2. He is a board-certified general surgeon and has an additional qualification in surgical critical care. *Id.* at 2. He is currently a tenured professor of surgery and anesthesiology at the University of Miami Miller School of Medicine and Medical Director of the Ryder Trauma Center. *Id.* Dr. Namias is certainly qualified to testify concerning when a patient suffering from an umbilical hernia should be seen by a surgeon.

On the second factor, reliability, Dr. Namias testifies that he has performed surgery on hundreds of people with hernias. Namias Depo. (Doc. 60-4) at 7. This vast experience combined with his outstanding academic and professional training makes his opinion sufficiently reliable to satisfy Rule 702. The third factor, helpfulness, is a more difficult question. The issue before the Court on Count VI is whether plaintiff has sufficient evidence that defendants violated Cook's Eighth Amendment right against cruel and unusual punishment through deliberate indifference to his serious medical needs to survive summary judgment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Dr. Namias does not testify directly to the deliberate indifference standard, but his testimony concerning when a surgical consultation is required is helpful to the Court in its analysis of this issue, and it will not be excluded under Rule 702 as an evidentiary matter.

Finally, it should be noted that the Court is only considering Dr. Namias' expert testimony at the summary judgment stage on Count VI. The Eleventh Circuit instructs that the barriers to the admission of expert testimony "are even more relaxed in a bench trial situation, where the judge is serving as factfinder and we are not concerned about dumping a barrage of questionable scientific evidence on a jury." *United States v. Brown*, 415 U.S. 1257, 1268 (11th Cir. 2005) (internal quotes and citation omitted). As with a bench trial, at summary judgment "[t]here is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself." *Id.* The Court will consider Dr. Namias' testimony as it decides summary judgment on plaintiff's deliberate indifference § 1983 claim. Amd. Compl. (Doc. 26) Count VI.

## III.     CONCLUSION

ACCORDINGLY, for the above-stated reasons, defendants' motion to preclude the testimony of plaintiff's expert, Nicholas Namias, M.D. (Doc. 51) is GRANTED with respect to plaintiff's state-law claims, Amd. Compl. (Doc. 26) Counts I & II, and DENIED with respect to plaintiff's federal claims, *id.* Count VI.

DONE this 2nd day of October, 2020.

/s/ Stephen M. Doyle
CHIEF UNITED STATES MAGISTRATE JUDGE