IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| EMMA D. COOK, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 2:17-cv-178-SMD |
| ) | |
| CORIZON, LLC, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**OPINION & ORDER**

**I.     INTRODUCTION**

This case arises from the death of a State prisoner, John S. Cook (Cook), due to allegedly substandard prison medical care. Plaintiff, the personal representative of Cook's estate,[1] brings 42 U.S.C. § 1983 deliberate indifference, Amd. Compl. (Doc. 26) Count VI, and state-law medical malpractice and wrongful death claims, *id.* Counts I & II, against the Alabama Department of Corrections' (ADOC) contract medical provider, Corizon, LLC, and two of its doctors, Tahir Siddiq, M.D., and Wilcotte Rahming, M.D. (collectively the remaining "defendants"). Pending before the Court are the remaining defendants' separate motions for summary judgment. (Docs. 53, 54, 55). Plaintiff has failed to support her claims with sufficient evidence to allow a jury to return a verdict in her favor. Accordingly,

---

[1] At the time of filing, Cook's mother and sister served as co-administrators of his estate. However, his mother passed away during the pendency of this case. Pl's Opp. (Doc. 61) at 1.

defendants' motions for summary judgment are GRANTED, and plaintiff's claims are DISMISSED in their entirety WITH PREJUDICE.

## II. PLAINTIFF'S CLAIMS

Count I is a state-law wrongful death claim against Corizon. Amd. Compl. (Doc. 26) ¶¶ 63-68. Count II is a medical malpractice claim against Drs. Saddiq and Rahming under the Alabama Medical Liability Act (AMLA), Ala. Code 1975 §§ 6-5-480 through 488; 6-5-540 through 552. Amd. Compl. (Doc. 26) ¶¶ 69-80. Count VI is an Eighth Amendment deliberate indifference claim brought pursuant to 42 U.S.C. § 1983. Amd. Compl. (Doc. 26) ¶¶ 96-105. By Orders dated May 10, 2019 (Docs. 36 & 37) this Court dismissed Counts III, IV & V.

## III. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When the non-moving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to "make a showing sufficient to establish the existence of an element essential to [its] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The legal elements of the plaintiff's claim dictate which facts are material and which are irrelevant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A fact is not material if a dispute over that fact will not affect the outcome of the case under the governing law. *Id.* "If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law." *Celotex*, 477 U.S. at 331 (White, J., concurring).

The court must view the proffered evidence in the light most favorable to the nonmovant and resolve all reasonable doubts about the facts in the nonmovant's favor. *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234,1243 (11th Cir. 2001). However, a mere scintilla of evidence in support of a position is insufficient; the nonmovant must produce sufficient evidence to enable a jury to rule in his favor. *Id.* The Eleventh Circuit explains that "[s]imply put, the plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (internal quotes and citations omitted).

### IV. **OPERATIVE FACTS**

Cook entered the ADOC system in April 2010 and was diagnosed with Hepatitis C from exposure to a dirty needle in May 2010. Siddiq Affidavit (Doc. 56-2) at 4; Rahming Affidavit (Doc. 57-7) at 4. By May 2011, Cook was experiencing decompensated cirrhosis of the liver. *Id.* Cirrhosis refers to a group of chronic liver diseases in which normal liver cells are damaged and replaced by scar tissue which degrades liver function and can eventually lead to liver failure. Siddiq Affidavit (Doc. 56-2) at 5.

On April 15, 2013, ADOC transferred Cook from the Easterling Correctional Facility to the Bullock County Correctional Facility ("Bullock"). Dr. Siddiq was the Medical Director at Bullock. Siddiq Affidavit (Doc. 56-2) at 3. On March 1, 2014, Cook was seen in Bullock's health care unit complaining of abdominal pain for approximately two weeks. *Id.* at 5; Rahming Affidavit (Doc. 57-7) at 4. Abdominal x-rays were taken on March 3, 2014, and an abdominal ultrasound was taken on March 4, 2014. *Id.* The x-rays

showed mild splenomegaly (enlargement of the spleen) and no other acute process. Siddiq Affidavit (Doc. 56-2) at 6. The abdominal ultrasound showed findings compatible with hepatic cirrhosis and ascites. *Id.* It also showed mild splenomegaly. *Id.*

Ascites is the build-up of fluid in the space between the lining of the abdomen and the abdominal organs. Rahming Affidavit (Doc. 57-7) at 7. Ascites results from high pressure in the blood vessels of the liver (portal hypertension) and low levels of the protein albumin. Severe liver damage leads to ascites. *Id.* Pressure from ascites can lead to further medical complications including umbilical hernia. *Id.*

Cook returned to Bullock's health care unit on April 25, 2014, with complaints of umbilical pain for approximately two weeks. *Id.* at 6-7; Rahming Affidavit (Doc. 57-7) at 4-5. The prison medical provider noted that Cook had mild tenderness to the umbilicus (naval) with no strangulation. *Id.* For the next several months, Dr. Siddiq and the medical staff at Bullock followed Cook's condition noting that he had an umbilical hernia that was easily reduceable with no tenderness. *Id.*

Umbilical hernias occur in approximately 20% of patients with liver cirrhosis complicated by ascites. Siddiq Affidavit (Doc. 56-2) at 7; Rahming Affidavit (Doc. 57-7) at 5. Due to the enormous intraabdominal pressure secondary to ascites, umbilical hernias in patients like Cook may enlarge rapidly and complicate. *Id.* On August 15, 2015, Cook's hernia became complicated, and he was transferred to the Emergency Room at Bullock County Hospital for further evaluation and treatment. Rahming Affidavit (Doc. 57-7) at 5-6. The Emergency Room staff found that Cook had an incarcerated umbilical hernia, and they transferred him to Jackson Hospital for surgery. Amd. Compl. (Doc. 26) ¶ 44.

The next day, surgeons at Jackson Hospital performed an exploratory laparotomy with small bowel resection. *Id.* ¶ 45. They discovered a gangrenous loop of small intestine and removed it. *Id.*

On August 20, 2015, Jackson Hospital discharged Cook to the infirmary at the Kilby Correctional Facility ("Kilby"). Rahming Affidavit (Doc. 57-7) at 6. Dr. Rahming was the Medical Director at Kilby. *Id.* at 3. When Cook entered the prison's infirmary, he had an open surgical wound that was pouring fluid. *Id.* at 6. The sutures were not holding the wound closed, and Cook got progressively worse over time with more widening and opening of the wound. *Id.*

While in the Kilby prison infirmary, Cook was seen and evaluated by prison medical staff 24-hours a day, 7-days a week. *Id.* at 7. Dr. Rahming saw Cook every weekday and nurses saw him on weekends. *Id.* Cook was prescribed Lasix and Aldactone in an attempt to decrease the volume of fluid he was producing, but his ascites worsened day by day. *Id.* He also began to experience encephalopathy, and Dr. Rahming prescribed medications as well as IV antibiotics to try to contain any infection. *Id.*

Kilby medical staff transferred Cook back to Jackson Hospital on three separate occasions after his surgery for follow-up evaluation and care. *Id.* at 7. On the final one of these transfers, Cook succumbed to his condition, and he died at Jackson Hospital on October 4, 2015. Amd. Compl. (Doc. 26) ¶¶ 60-61.

## V.     ANALYSIS

### A.     State-law Claims – Amd. Compl. (Doc. 26) Counts I & II

Pursuant to the *Erie*[2] doctrine, federal courts adjudicating state-law claims under their diversity or supplemental jurisdiction apply state substantive law and federal procedural law. *Palm Beach Golf Center-Boca, Inc. v. Sarris*, 781 F.3d 1245, 1259-60 (11th Cir 2015). Here, defendants properly removed this action from state court on the basis of federal question jurisdiction, 28 U.S.C. § 1331, and the Court exercises supplemental jurisdiction over plaintiff's state-law claims pursuant to 28 U.S.C. § 1367 (a). *See* Notice of Removal (Doc. 1). Alabama substantive law therefore governs these claims.

To maintain a malpractice or wrongful death claim against a healthcare provider under Alabama law, a "plaintiff must ordinarily present expert testimony from a similarly situated health-care provider as to (1) the appropriate standard of care, (2) a deviation from that standard of care, and (3) a proximate causal connection between the . . . breach and the injury[.]" *Collins v. Herring Chiropractic Ctr., LLC*, 237 So. 3d 867, 870 (Ala. 2017) (internal quotes and citation omitted). Expert testimony is not required where "the lack of skill is so apparent as to be understood by a layperson and require[s] only common knowledge and experience to understand it" or where a plaintiff relies on an authoritative medical treatise. *Id.* at 871. Neither exception to the expert requirement is at issue here.

---

[2] *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

Plaintiff proffers the expert testimony of Dr. Nicholas Namias, a board-certified surgeon, that Dr. Siddiq breached the standard of care by failing to order a surgical consultation for Cook's umbilical hernia prior to it becoming incarcerated. Namias Depo. (Doc. 60-4) at 44-47. Dr. Namias also testifies that it is unusual to use towels to wipe up ascites post-surgery and that a vacuum pump should have been used if ordered by the physician. *Id.* at 47-48. By separate contemporaneous Order, the Court is excluding Dr. Namias' testimony on plaintiff's state-law claims because he is not similarly situated to Drs. Siddiq and Rahming as required by the AMLA. *See* (Doc. 71). Plaintiff's lack of expert testimony is fatal to her state-law claims, and she agrees that "if the Court precludes Dr. Namias from testifying, then plaintiff will concede that summary judgment is due to be granted." Pl's Opp. (Doc. 61) at 2.

### B.      § 1983 Deliberate Indifference Claim

Count VI is an Eighth Amendment deliberate indifference claim brought pursuant to 42 U.S.C. § 1983. Amd. Compl. (Doc. 26) Count VI. As an initial matter, plaintiff has abandoned this claim because she fails to make any arguments supporting it in her opposition papers. Pl's Opp. (Doc. 61); *see, e.g.*, *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned when argument not presented in initial response to summary judgment motion); *Chancy v. Fairfield S. Co., Inc.*, 949 F. Supp. 2d 1177, 1194-95 (N.D. Ala. 2013) (collecting cases). Moreover, plaintiff's constitutional claim fails on the merits.

In *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), the Supreme Court recognized "that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary

7

and wanton infliction of pain proscribed by the Eighth Amendment." (internal quotes and citation omitted). To prevail on a deliberate indifference claim, plaintiff must establish both an objective and a subjective component. *Bingham v. Thomas*, 654 F.3d 1171, 1175-76 (11th Cir. 2011). First, the "plaintiff must show an objectively serious deprivation of medical care by demonstrating (1) an objectively serious medical need that, if left unattended, poses a substantial risk of harm, and (2) that the prison official's response . . . was poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice[.]" *Id.* at 1176 (internal quotes and citation omitted). Second, plaintiff must show that the prison official acted with the "subjective intent to punish" by establishing the official's "(1) subjective knowledge of a risk of serious harm, (2) disregard of that risk, and (3) by conduct that is more than mere negligence." *Id.* (internal quotes and citation omitted). The Supreme Court emphasizes that "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

Here, the undisputed summary judgment record shows that Cook had Hepatitis C that caused cirrhosis with ascites and ultimately led to an umbilical hernia. Siddiq Affidavit (Doc. 56-2) at 1-7; Rahming Affidavit (Doc. 57-7) at 4-5. Dr. Siddiq monitored and treated this condition conservatively when the hernia was easily reduceable. Siddiq Affidavit (Doc. 56-2) at 7; Rahming Affidavit (Doc. 57-7) at 5. Once Cook's hernia became

incarcerated, he was immediately transferred to the Bullock County Hospital and then to Jackson Hospital for surgery. Siddiq Affidavit (Doc. 56-2) at 8; Rahming Affidavit (Doc. 57-7) at 5-6.

Plaintiff's expert, Dr. Namias, testifies that Cook should have been sent for a surgical consultation prior to his hernia becoming incarcerated. Namias Depo. (Doc. 60-4) at 44-47. With respect to other aspects of Cook's care, Dr. Namias testifies that "I have no—no reason to question or debate what Dr. Siddiq did in the time pre-op. except for getting a [timely] consult." *Id.* at 44. Dr. Rahming testifies that "Cook was correctly treated conservatively while his hernia was easily reduceable." Rahming Affidavit (Doc. 57-7) at 5.

Plaintiff's evidence, taken in the light most favorable to her, shows nothing more than a disagreement in medical judgment between a surgeon and an internist. The Supreme Court instructs that "whether an X-ray—or additional diagnostic techniques or forms of treatment—is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures does not represent cruel and unusual punishment. At most it is medical malpractice[.]" *Estelle*, 429 U.S. at 107. Accordingly, plaintiff has failed to show an objectively serious deprivation of medical care sufficient to support an Eighth Amendment deliberate indifference claim, and her claim fails on the objective prong. In addition, plaintiff has proffered absolutely no evidence showing that Dr. Siddiq or Dr. Rahming acted with the subjective intent to punish Cook, and her Eighth Amendment claim fails on that ground as well.

## VI.    CONCLUSION

For the above-stated reasons, defendants Corizon, LLC, Tahir Siddiq, M.D., and Wilcotte Rahming, M.D.'s motions for summary judgment (Docs. 53, 54, 55) are GRANTED and plaintiff's remaining claims are DISMISSED in their entirety WITH PREJUDICE.  A separate judgment shall issue.

DONE this 2nd day of October, 2020.

/s/ Stephen M. Doyle
CHIEF UNITED STATES MAGISTRATE JUDGE